UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENN EARL PARR,

                          Petitioner,                    Case Number 2:10-CV-13265
                                                          Honorable Paul D. Borman
v.

MARY BERGHUIS,

                          Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Glenn Earl Parr filed an application for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. Petitioner was convicted after a jury trial in the St. Clair Circuit Court of one count

of third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d, and six counts of fourth-

degree criminal sexual conduct. MICH. COMP. LAWS § 750.520e.  The trial court sentenced him to

a controlling term of seven-to-fifteen years in prison for the third-degree conviction and concurrent

one-year terms for the fourth-degree convictions. Petitioner contends that: (1) the trial court denied

his right to present a defense when it excluded testimony from other women that he had not sexually

assaulted them; (2) the trial court erroneously allowed a police officer to testify to a prior consistent

statement made by one of the victims; and (3) the trial court incorrectly scored the sentencing

guidelines. The Court finds that none of the claims have merit. The petition will therefore be denied

I.

Petitioner owned a massage therapy business.  The charges against him arose when four of

his clients accused him of inappropriately touching them while he was massaging them.

At Petitioner's trial, Rachel Chisholm testified that she went with her boyfriend to

Petitioner's business for a couple's massage. Chisholm and her boyfriend were taken to separate rooms, and Petitioner directed her to take all of her clothes off including her panties. Chisholm thought the request was odd because in her previous experience with a couple's massage, she was was placed in the same room with her partner and was told to leave her panties on. Chisholm got undressed but kept her panties on.

After she undressed, Petitioner returned to the room and began to massage her. Petitioner massaged her legs up to the point where he touched her vaginal area over her panties. This happened several times, and though it bothered her, she did not say anything. While she was on her back, Petitioner also massaged her shoulders and proceeded down onto her breasts, including the nipples.

When the massage was over, Chisholm waited for her boyfriend in the waiting room. When he was finished, she told him what had happened. They drove by the Sheriff's Department with the intention of making a report, but Chisholm decided to let it go. At no time prior to the massage did Petitioner mention that this type of contact would occur, nor did Chisholm complain during the massage. Chisholm later saw a news story about something similar happening to another woman at Petitioner's place of business, and that spurred her to report her experience to the police.

Lori Kutz testified that she knew Petitioner through membership in a business networking group. At one of the group's meetings, Petitioner offered the other members a special discount on massages. Kutz took advantage of the discount and scheduled a massage with Petitioner.

When she arrived at the appointment, Petitioner greeted her by saying, "Hi, sexy." Petitioner took Kutz into the massage room and told her to get undressed and get on the table. She undressed down to her underwear and got on the table. She thought the way Petitioner handled the draping was

unusual. Her experience had been that when changing sides, a masseuse would hold the sheet up to block any view of the customer, and then would tuck it back in around her. But when Petitioner asked her to turn, she was sure "he saw a lot more than my face." Other than this incident, the massage proceeded normally for about fourty minutes. Then, Petitioner started to massage her legs and proceeding to place his hand on her crotch. This happened about twelve times. When an article about another incident with Petitioner appeared in the newspaper, Kutz contacted the Sheriff's Department.

Heather Carpenter and her husband, Jeffery, were also members of the networking group. Petitioner offered her a free massage. Even though her husband was a chiropractor with four massage therapists working with him, she decided to accept Petitioner's offer because she thought it would be more relaxing.

When Carpenter arrived for her appointment, she was greeted by Petitioner and his receptionist. Petitioner gave her a tour of his building and then showed her to a massage room. She got undressed and arranged herself on the table under a sheet. When Petitioner came in he asked her if there were any areas she needed work on. She told him she had tension in her neck and she had a young son she carried on her left hip.

During the massage Petitioner moved his hands higher on her breasts until he was touching the areolas. He did the same thing when he worked on her legs, working high on the leg until his fingers brushed her labia. This happened quite a few times and did not seem to be accidental.

After Carpenter left, she immediately went back to her husband's office and told the receptionist what had happened. She also talked to their masseuses and inquired about their own practices. Carpenter testified that she did not go to the police because said she thought that people

3

might think she was trying to draw attention away from Petitioner's business because it was located right across the street from her husband's. Several weeks later, Carpenter was approached by Lori Kutz about what had happened to her. Later, when the newspaper article came out, she reported the incident to the police.

Chelsea Miller was eighteen years old at the time of the trial. Petitioner was her massage therapist for treatment related to her migraine headaches. Over the course of two weeks in January of 2007 she went to him five or six times.

On January 29, 2007, Miller and her mother both had appointments for massages. When they arrived, Petitioner changed the order of the appoints so that Chelsea's mother went first. After her mother's massage was finished, Petitioner told Chelsea to "get all the way undressed." She got undressed but kept her underwear on. Petitioner returned to the room and turned the lights all the way off rather than just dimming them as he had done before. He massaged her buttocks, which he had not done before, and then he touched her breasts under the sheet.

While Petitioner was doing this, he rubbed his face against hers, kissed her on the forehead, and told her she was very beautiful. When he touched her breasts, he specifically touched her nipples. Petitioner then moved to her side and began to massage her groin area. He moved his hand underneath her underwear and used his finger to penetrated between the folds of her labia. He did this from both sides of her body, more than once. He moved his finger and had contact with her clitoris. When he did this, Chelsea started crying. When he finished the massage, Petitioner told her that he was sorry and that it would not happen again. Chelsea did not want to upset her mom, so she did not tell her what had happened.

Chelsea's mother, Elizabeth Wickings, testified that she saw that her daughter was upset after

4

her massage, but Chelsea blamed her mood on a migraine.

Chelsea stayed home from school for the next two days, saying that she did not feel well. She told her mother she was not going to go to the next massage appointment. When her mother told her to stop by Petitioner's office to re-schedule the appointment, Chelsea became visibly upset. Eventually, after Chelsea gave her mother enough information about what had happened, she called the Sheriff's Department.

Teresa Kiczak testified that she was one of the massage therapists who worked for Dr. Carpenter when Heather Carpenter had her experience with Petitioner. She trained as a massage therapist at Baker College. During training she was instructed that it was unaceptable to massage a woman's breasts or genital area. She knew of no acceptable therapeutic purpose for penetrating awoman's vagina during a massage.

Detective Sergeant Bryce Willoughby of the Michigan State Police testified that he interviewed Petitioner in relation to his actions with Chelsea Miller. During the course of the interview, Petitioner admitted to placing his index fingers in her vagina and touching her breasts.

Petitioner testified on his own behalf. He testified that he did nothing wrong, and he only confessed to Detective Willoughby as part of a scheme to trick Chelsea Miller into admitting she had lied about what happened. Petitioner also claimed that Willoughby tricked him into admitting things he did not do.

Petitioner testified that the other complainants falsely accused him. He explained that he had refused to sell Lori Kutz's soap in his office, Heather Carpenter wanted to eliminate competition for her husband, and Rachel Chisholm's mother was part of the business networking group's clique that was out to get him. Dani Graham was likewise motivated to eliminate Petitioner as a competitor

because her business also offered massage therapy.

After closing arguments and jury instructions, the jury found Petitioner guilty as charged.

Following sentencing, Petitioner filed an appeal of right. His appointed appellate attorney filed a brief on appeal that raised the following claims:

I. The trial court abused its discretion and reversibly erred by excluding as irrelevant the testimony of several of Mr. Parr's clients and co-workers that they never encountered inappropriate touching by Mr. Parr. Such evidence was both relevant and admissible to show that Mr. Parr habitually used proper massage techniques and never inappropriately touched clients.

II. The trial court reversibly erred by allowing Detective Carrier to testify to the substance of the police report, when only part of that report was offered as a prior inconsistent statement for impeachment purposes, thereby improperly bolstering the earlier testimony of Rachel Chisolm.

III. The trial court reversibly erred by assessing 15 points for offense variable 10 because Mr. Parr did not engage in any pre-offense conduct specifically targeted at Ms. Miller or directed at Ms. Miller for the primary purpose of victimization.

The Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Parr*, 2009 Mich. App. LEXIS 2111 (Mich. Ct. App. October 13, 2009). Petitioner subsequently filed an application for leave to appeal, which raised the same claims. The Michigan Supreme Court denied the application in a standard order. *People v. Parr*, No. 140129 (Mich. Sup. Ct. March 29, 2010).

Petitioner's habeas application presents the same three claims that were raised in the state courts.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas

corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state-court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)-(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct.

7

770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

III.

A.

Petitioner's first claim asserts that the trial court violated his right to present a defense when it prohibited him from presenting clients and co-workers to testify that they never encountered Petitioner inappropriately touching someone during a massage. Petitioner sought to introduce this testimony under Michigan Rule of Evidence 406 as "habit" evidence. The trial court excluded the evidence as irrelevant. On direct appeal, Petitioner argued that the trial court erred under Rule 406. He did not argue that the exclusion of the evidence also violated his federal constitutional rights. The Michigan Court of Appeals found that "evidence that [Petitioner] did not inappropriately touch several of his clients does not establish that he has a habit of not inappropriately touching several other women during their massages." *Parr*, 2009 Mich. App. LEXIS 2111 at *4.

Alleged errors in the application of state evidence law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). This is because the state courts are the final arbiters of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A state court's determination that a particular piece of evidence is or is not admissible as a matter of state evidentiary law is therefore binding on a federal habeas court. *See McGuire*, 502 U.S. 62, 67-68. Accordingly, to the extent that Petitioner argues that his proposed evidence was admissible under Rule 406, the claim is foreclosed by the state court's holding to the contrary.

Petitioner also asserts that the exclusion of the evidence violated his right to present a defense. This argument was never presented to the state courts and is therefore unexhausted. To satisfy the exhaustion requirement of 28 U.S.C. § 2254(b), each factual claim must be presented to

9

the state courts as a matter of specific federal law. *Gray v. Netherland*, 518 U.S. 152, 163 (1996); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court"); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made") (citations omitted). Petitioner never asserted in the state courts that the trial court's ruling violated his federal constitutional rights.

The Court will nevertheless address Petitioner's right to present a defense claim because it is plainly without merit. 28 U.S.C. § 2254(b)(2). Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law. Implicit in these provisions is the right to present a meaningful defense. As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Furthermore, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, 98 S. Ct. at 1923. Although the right to present a defense is fundamental, it is not absolute. *Baze v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004). The right may be legitimately circumscribed by other legitimate demands of the criminal justice system. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Further, to constitute a denial of the right to present a defense, a trial court's exclusion of

evidence must "infringe[] upon a weighty interest of the accused." *Id.* at 308. A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315). Thus, "whether the exclusion of witnesses' testimony violated [the] defendant's right to present a defense depends upon whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (internal quotations marks and citation omitted).

Petitioner was not prevented from presenting his defense that he was falsely accused. He testified in his own defense about the various motivations he believed that the complainants had to falsely accuse him. His counsel was also able to fully cross-examine each of the complainants about their potential motivation to lie. The only thing Petitioner was prevented from doing was presenting the testimony of clients that he did not inappropriately touch.

Petitioner's trial theory was to show that he had a "habit" of performing appropriate massages. But as the Michigan Court of Appeals suggested, whether a masseur resists a temptation to inappropriately touch a client for a sexual purpose while performing a massage is more a matter of character than habit. "Character" and "habit" are similar concepts. And pursuant to both federal and state evidentiary law, evidence of a defendant's character is generally not admissible to establish "action in conformity therewith on a particular occasion." See Michigan and Federal Rules of Evidence 404(b). Courts have generally proceeded cautiously in permitting the admission of a pattern of conduct as habit, "because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character,

11

thereby thwarting Rule 404's prohibition against the use of character evidence except for narrowly

prescribed purposes." *Simplex, Inc v. Diversified Energy Systems*, 847 F.2d 1290, 1293 (7th Cir.

1988).

> "[H]abit refers to the type of non-volitional activity that occurs with invariable regularity. It is the non-volitional character of habit evidence that makes it probative." *Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989). Thus, activity that is extremely complicated is unlikely to be considered habit, since such activity would ordinarily be dependent on a significant thought process, as well as a number of contingencies, and all of this is inconsistent with the notion of habit as reflexive and semiautomatic. . . .

FED. R. EVID. 406, Commentary, Character Distinguished.

A massage is a complex volitional activity, and performing one without inappropriately

touching the client for a sexual purpose is the result of character not habit. That is, one does not

make a habit of not committing criminal sexual conduct; rather, it is his character that tells him such

conduct is repugnant. Therefore, there was nothing fundamentally unfair about excluding the

proffered "habit" evidence. Petitioner's first claim is therefore without merit and will be denied

despite the fact that it was not exhausted as a federal claim in the state courts.

### B.

Petitioner's second claim asserts that the trial court erred in allowing the admission of prior

consistent statements of one of the complainants. The trial court allowed the prosecutor to question

Deputy Jason Carter about the consistency of Rachel Chisholm's trial testimony with the statement

she made to him during the police investigation. The trial court found the testimony was admissible

because defense counsel had challenged Chisholm's credibility during cross-examination.

The admission of a prior consistent statement when the declarant is available for

cross-examination at trial, as was the case here, is not a question that rises to the level of a

constitutional violation for purposes of habeas corpus relief. *See United States ex. rel. Gonzalez v. DeTella*, 918 F. Supp. 1214, 1222 (N.D. Ill. 1996)(internal citations omitted). Indeed, there is no violation of the Sixth Amendment's Confrontation Clause when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens*, 484 U.S. 554, 560 (1988); *United States v. Mayberry*, 540 F. 3d 506, 516 (6th Cir. 2008). As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green*, 399 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens*, 484 U.S. at 560 (internal citations omitted). When a declarant's out-of-court statement is admitted at a criminal defendant's trial, "the question is whether defendant has the opportunity to cross-examine the declarant at trial." *Strayhorn v. Booker*, 718 F. Supp. 2d 846, 867 (E.D. Mich. 2010)(emphasis original). Because Chisholm testified at Petitioner's trial and was subject to cross-examination, the admission of her out of court statements did not violate his constitutional rights. *See Benton v. Booker*, 403 Fed.Appx. 984, 986 (6th Cir. 2010). The claim is meritless.

## C.

Petitioner's final claim asserts that the trial court incorrectly scored the sentencing guidelines. Specifically, he argues that he was given too many points for predatory conduct of a vulnerable victim. The claim is not cognizable in this action.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal

habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003); *See also Haskell v. Berghuis*, 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score does not merit habeas relief. *Id.* Petitioner is therefore not entitled to habeas relief on his third claim.

IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability

14

when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

V

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is DENIED.

It is further ORDERED that permission to proceed in forma pauperis on appeal is DENIED.

Paul. D. Borman
United States District Judge

Dated: 11-26-12

15